IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:13cr74 |
| | ) | |
| v. | ) | Count 1: Major Fraud against the |
| | ) | United States (18 U.S.C. § 1031) |
| | ) | |
| KEITH HEDMAN, | ) | Count 2: Conspiracy to Commit |
| Defendant. | ) | Bribery (18 U.S.C. § 371) |
| | ) | |

### Criminal Information

The United States charges that:

### Count 1
### (Major Fraud against the United States)

1. In or about August 2006, the United States, in a procurement of services, awarded National Aeronautics and Space Administration ("NASA") prime contract number NNK06MA86B ("Contract A86B") to Company B, the value of said prime contract being $2,970,000.00.

*The Scheme and Artifice*

2. Beginning in or about 2003 and continuing up to in or about February 2012, in connection with the foregoing and other procurements, the defendant, Keith Hedman, with others known and unknown, executed and caused to be executed a scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

3. It was part of the scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations and promises, that the defendant would and did: (i) create Company B as an entity with a titled owner whom the defendant exercised impermissible control; (ii) represent falsely and cause Company B to represent falsely to NASA, the Small Business Administration ("SBA"), and other U.S. government agencies that Company B was eligible for SBA-administered contracting preferences (including those provided under its "8(a) Business Development Program" for disadvantaged small business owners and those provided to small businesses more generally); (iii) conceal and cause Company B to conceal that Hedman, who was not eligible for the aforementioned SBA contracting preferences, exercised impermissible control over Company B; (iv) misrepresent and cause Company B to misrepresent that Company B was in compliance with SBA regulations pertaining to Company B's NASA contracts, including that Company B employees had performed the required percentage of work on those contracts; (v) cause Company B to receive 8(a) and small business contract awards, including Contract A86B, to which Company B was not entitled; and (vi) cause Company B to receive at least approximately $31,830,340.73 in payments on those contracts to which Company B was not entitled.

### *Execution of the Scheme and Artifice*

4. From in or about July 2005 through in or about February 2012, within the Eastern District of Virginia and elsewhere, the defendant, Hedman, knowingly executed and caused to be executed the scheme and artifice in connection with Contract A86B with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. The defendant did so by, among other things, signing Contract A86B as Company B's "V.P. of Operations" and by intentionally causing to be

submitted to NASA task order proposals and other required information in connection with Contract A86B, despite knowing that Company B was not eligible for that contract or payment on that contract because Hedman and others created and exercised impermissible control over Company B to obtain SBA-administered contracting preferences to which Hedman and the other Company A managers were not entitled. As a result of these and other fraudulent actions, NASA paid Company B a total of $1,988,539.87 on Contract A86B, none of which Company B was entitled to receive.

(All in violation of Title 18, United States Code, Section 1031.)

## Count 2
### (Conspiracy to Commit Bribery)

5. From in or about October 2011 through in or about February 2012, in the Eastern District of Virginia and elsewhere, the defendant, Keith Hedman, did knowingly and intentionally combine, conspire, confederate, and agree with Individual #1, a U.S. government official with U.S. Agency #1, to commit bribery, that is: to directly and indirectly corruptly give, offer, and promise a thing of value to a public official with intent to (i) influence any official act; and (ii) to induce such public official to do and omit to do an act in violation of the lawful duty of such official, all in violation of Title 18, United States Code, Section 201(b)(1)(A) and (C).

*Purpose, Manner, and Means of the Conspiracy*

6. The purpose of the conspiracy was for the defendant to obtain U.S. government contracts for his benefit and the benefit of the companies he controlled through Individual #1 (i) performing official acts, including lobbying of other U.S. government officials); and (ii) otherwise violating his lawful duties as a public official, all in return for money to be routed by Hedman to Individual #1 through Company B.

3

7. The manner and means by which the defendant and others would and did carry out the conspiracy included, but were not limited to, the following:

    a. drafting a "consulting agreement" between Company B and Individual #1 to pay Individual #1 $50,000 over a 12-month period through a "consulting" company Individual #1 maintained;

    b. communicating with Individual #1 over email regarding possible U.S. government contracting opportunities Individual #1 could help Company B procure;

    c. Individual #1 lobbying U.S. government officials to help Company B obtain U.S. government contracts;

    d. Individual #1 sharing insider information obtained from other U.S. government officials with the defendant for the purpose of helping Company B obtain U.S. government contracts; and

    e. paying Individual #1 approximately $4,166.67 each month from Company B's accounts based on the $50,000 consulting services agreement and in exchange for Individual #1's assistance.

*Overt Acts*

8. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Virginia and elsewhere:

    a. In or about October 2011, the defendant asked D.H. to draft a "consulting agreement" between Company B and Individual #1 to pay $50,000 over 12 months;

b. In or about September and October 2011, the defendant printed out a Microsoft Outlook "contact file" with Individual #1's name, his U.S. Agency #1 position, and the contact information for his consulting company, wrote "$4,166.67" and "$50k" on the printout, and gave it to D.H.;

c. On or about October 13, 2011, Individual #1 emailed the defendant, "I have put about 5 irons in the fire, all of which could make us all very happy and even make me take a step back from my steady if they pop";

d. On or about October 13, 2011, the defendant emailed Individual #1 a website screenshot about a prospective contract with U.S. Agency #1; and

e. In or about January 2012, Individual #1 forwarded an email exchange to the defendant in which Individual #1 had recommended Company B for a U.S. Agency #1 contract.

(All in violation of Title 18, United States Code, Section 371)

Neil H. MacBride
United States Attorney

Jeffrey H. Knox
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

By: *[signature]*

Chad I. Golder
Ryan S. Faulconer
Assistant U.S. Attorneys

5